**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FOXMIND CANADA ENTERPRISES, LTD,

     Plaintiff,

  v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A HERETO,

     Defendants.

Case No.:

**COMPLAINT**

Plaintiff FOXMIND CANADA ENTERPRISES, LTD. ("FoxMind" or "Plaintiff") hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants"):

**Introduction**

1.    This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with the MATCH MADNESS trademark, which is covered by U.S. Trademark Registration No. 5212863 (the "MATCH MADNESS Trademark"), and copyrights, specifically U.S. Copyright Office Registration Nos. VA 2-136-024 and VA 2-291-501 (the "MATCH MADNESS Copyrights"). Plaintiff is the exclusive licensee of the MATCH MADNESS Trademark and the MATCH MADNESS Copyrights by way of a license agreement entered into between FoxMind Group Ltd. and Plaintiff, and is the official source of MATCH MADNESS products in the USA.

2.    The registrations are valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration for the MATCH MADNESS Trademark and the federal

CSDOCS/41279442v2

copyright registrations as shown in the United States Copyright Office's Copyright Catalogue for the MATCH MADNESS Copyrights are attached hereto as **Exhibit 1**.

3. Defendants are improperly advertising, marketing and/or selling unauthorized and illegal products (the "Counterfeit Products") in the United States, including Illinois, infringing upon Plaintiff's MATCH MADNESS Trademark and MATCH MADNESS Copyrights, by selling Counterfeit Products that purport to be genuine and authorized products using the MATCH MADNESS Trademark and MATCH MADNESS Copyrights (the "MATCH MADNESS Products"), which causes further confusion and deception in the marketplace.

4. The Defendants have created numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), including on the online platforms Alibaba.com ("Alibaba"), AliExpress.com ("AliExpress"), Allstartoyz.com ("AllStarToyz"), Amazon.com ("Amazon"), Athetier.com ("Athetier"), Boardgamegeek.com ("Boardgamegeek"), DHgate.com ("DHgate"), eBay.com ("eBay"), theuzzle.com ("Uzzle"), Walmart.com ("Walmart"), and Wish.com ("Wish").

5. The Defendants design the online marketplace accounts to appear to be selling genuine MATCH MADNESS Products, while selling inferior imitations of such products.

6. The Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademark and copyrights, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8.      As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark, copyrights, and goodwill and, therefore, seeks injunctive and monetary relief.

9.      The Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## Subject Matter Jurisdiction

10.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

11.     This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

12.     This Court has jurisdiction over the deceptive trade practices claim in this action that arises under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## Personal Jurisdiction and Venue

13.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to 735 ILCS 5/2-209, or in the alternative Fed. R. Civ. P. 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Illinois and in this Judicial District, and/or derive substantial revenue from business transactions in Illinois and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and

CSDOCS/41279442v2

infringing actions caused injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this Judicial District, for example:

    a. The Defendant Internet Stores that each Defendant operates accept orders of Counterfeit Products from and offer shipping to Illinois addresses located in this Judicial District. Screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached to the declaration of David Capon ("Capon Decl."), filed contemporaneously herewith, as **Exhibit 2**.

    b. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts with online marketplace platforms such as Alibaba, AliExpress, AllStarToyz, Amazon, Athetier. Boardgamegeek, DHgate, eBay, Uzzle, Walmart, and Wish (the "Platforms" or "Marketplace Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Illinois (and more particularly, in this Judicial District), can view the one or more of Defendant Internet Stores, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Illinois (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Illinois (and more particularly, in this Judicial District).

CSDOCS/41279442v2

    c. Upon information and belief, Defendants have transacted business with consumers located in the United States, including Illinois (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

14. In addition, Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this Judicial District.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Defendants have committed acts of trademark infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and reside or may be found in this district. Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and reside or may be found in this district.

**The Plaintiff**

16. Plaintiff FoxMind is a Canadian corporation and the exclusive licensee of the MATCH MADNESS Trademark and the MATCH MADNESS Copyrights, attached as Exhibit 1.

17. FoxMind makes its products, including its MATCH MADNESS Products, available across the globe including in thousands of boutiques, specialty shops and major retailers. FoxMind has earned an international reputation for innovation, quality, reliability and value and has been nominated for and won numerous international awards for its educational, family, and strategy games. FoxMind is the official source of MATCH MADNESS Products in the United States.

CSDOCS/41279442v2

**The Defendants**

18.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

19.     Defendants are merchants on online marketplace platforms, including Alibaba, AliExpress, AllStarToyz, Amazon, Athetier, Boardgamegeek, DHgate, eBay, Uzzle, Walmart, and Wish (the "Marketplace Platforms"), through which Defendants offer for sale and/or sell Counterfeit Products and which, upon information and belief, are owned by:

a.     Alibaba.com ("Alibaba") is a website registered to Alibaba Cloud Computing (Beijing) Co., Ltd. with a registration address in Zhejiang, China;

b.     AliExpress.com ("AliExpress") is a website registered to Alibaba Cloud Computing (Beijing) Co., Ltd. with a registration address in Guang Xi, China;

c.     Allstartoyz.com ("AllStarToyz") is a website registered to Tucows, Inc., with a registration address of 96 Mowat Ave., Toronto, Ontario, Canada M6K 3M1

d.     Amazon.com, Inc. ("Amazon"), a Washington corporation with a principal place of business at 410 Terry Ave N, Seattle, Washington 98109;

e.     Athetier.com ("Athetier"), is a website registered to Tucows, Inc., with a registration address of 96 Mowat Ave., Toronto, Ontario, Canada M6K 3M1

f.     Boardgamegeek.com ("Boardgamegeek"), is a website registered to GoDaddy.com, LLC, with a registration address of 2155 E Warner Rd., Tempe, Arizona 85284;

g.     DHgate.com ("DHgate") is a website registered to eName Technology Co., Ltd. with a registration address in Beijing, China;

h.     eBay, Inc. ("eBay"), a California corporation with a principal place of business at 2025 Hamilton Avenue, San Jose, California 95125;

i.     theuzzle.com ("Uzzle"), is a website registered to Tucows, Inc., with a registration address of 96 Mowat Ave., Toronto, Ontario, Canada M6K 3M1;

j.     Walmart , Inc. ("Walmart") is a Delaware corporation with a principal place of business at 702 S.W. 8th St. Bentonville, Arkansas 72716; and

6

k.      ContextLogic Inc. ("Wish") is a Delaware corporation with a principal place of business at One Sansome Street, 33rd Floor, San Francisco, California 94104.

### The MATCH MADNESS Products

20.     Between 2016 and 2018, FoxMind Group Ltd. obtained trademark and initial copyright registrations for its MATCH MADNESS Products, each in respect of the copyright embodied by the corresponding MATCH MADNESS products. Exemplary units of each of the MATCH MADNESS Products for which a copyright registration has been registered have been deposited with the United States Copyright Office and remain available for inspection there.

21.     By an exclusive licensing agreement with FoxMind Group Ltd., Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted work in copies, to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the MATCH MADNESS Trademark, covered by U.S. Trademark Registration No. 5212863, and the copyrights for the MATCH MADNESS Products, including copyrights covered by U.S. Copyright Office Registration Nos. VA 2-136-024 and VA 2-291-501.

22.     Since the initial development of the MATCH MADNESS Products, Plaintiff has been the only authorized source for the MATCH MADNESS Products in the United States. In 2016, FoxMind began to commercialize the MATCH MADNESS Products, attracting substantial international media attention and success.

23.     For ease of reference, the pictures below reflects the relevant exemplary MATCH MADNESS Products for which registrations have been obtained and still remain available for sale today as part of the MATCH MADNESS Product range:

7

 

24.     From the date of the first MATCH MADNESS's creation to the present, FoxMind is and has been the official source of the genuine MATCH MADNESS Products in the United States. The current product ranges are reflected below:



8



25.     FoxMind has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MATCH MADNESS Products. As a result, products embodying the MATCH MADNESS Trademark and the MATCH MADNESS Copyrights are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from FoxMind.

### The Defendants' Unlawful Conduct

26.     The success of the MATCH MADNESS Products has resulted in significant counterfeiting.

27.     Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites and marketplace listings on platforms such as the Marketplace Platforms, which were offering for sale, selling, and importing Counterfeit Products to consumers in this Judicial District and throughout the United States.

28.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to

CSDOCS/41279442v2

receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

29.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine MATCH MADNESS Products.

30.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

31.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

32.     Plaintiff has not licensed or authorized Defendants to use the MATCH MADNESS Trademark or the MATCH MADNESS Copyrights, and none of the Defendants are authorized retailers of genuine MATCH MADNESS Products.

33.     On personal knowledge and belief, Defendants deceive unknowing consumers by using the MATCH MADNESS Trademark or the MATCH MADNESS Copyrights without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MATCH MADNESS products.

34.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using unauthorized search engine optimization ("SEO") tactics and social media spamming so

that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine MATCH MADNESS Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell counterfeit MATCH MADNESS Products into this District.

35. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their Defendant Internet Stores and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done.

36. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

37. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective Defendant Internet Stores.

38. In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

39. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics,

HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

40.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

41.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

42.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

43.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

44.      On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases

---

[1]     https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are "very adept at setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited May 12, 2022).

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited May 12, 2022).

CSDOCS/41279442v2

indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

45.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the MATCH MADNESS Trademark and/or MATCH MADNESS Copyrights in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

46.     Each Defendant Internet Store offers shipping to the United States, including Illinois (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit MATCH MADNESS Products into the United States, including Illinois (in this Judicial District).

47.     Defendants' use of the MATCH MADNESS Trademark and MATCH MADNESS Copyrights in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

48.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the MATCH MADNESS Trademark and MATCH MADNESS Copyrights, of the fame and incalculable goodwill associated therewith and of the popularity and success of the MATCH MADNESS Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

49.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the MATCH MADNESS Products.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**
**[Against Defendants Designated in Schedule A]**

50.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–49 of this Complaint.

51.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered MATCH MADNESS Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MATCH MADNESS Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under the MATCH MADNESS Trademark.

52.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the MATCH MADNESS Trademark without Plaintiff's permission.

53.     Plaintiff is the exclusive licensee and official source of MATCH MADNESS Products. The United States Registration for the MATCH MADNESS Trademark (Exhibit 1) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the MATCH MADNESS Trademark and are willfully infringing and intentionally using counterfeits of the MATCH MADNESS Trademark. Defendants' willful, intentional, and unauthorized use of the MATCH MADNESS Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

54.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

55.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit MATCH MADNESS Products.

56.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of its well-known MATCH MADNESS Trademark.

**SECOND CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**[Against Defendants Designated in Schedule A]**

57.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–56 of this Complaint.

58.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

59.     By using the MATCH MADNESS Trademark in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

60.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

61.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**THIRD CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)**
**[Against Defendants Designated in Schedule A to the Complaint]**

62.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–61 of this Complaint.

15

63.     Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the MATCH MADNESS Copyrights, as the exclusive licensee thereof.

64.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the MATCH MADNESS Copyright without Plaintiff's permission.

65.     Defendants had access to the MATCH MADNESS Products incorporating Plaintiff's registered copyright before Defendants created their online marketplace accounts.

66.     Upon information and belief, Defendants have directly copied the MATCH MADNESS Copyrights.

67.     Alternatively, Defendants' representations of Plaintiff's copyrights for the MATCH MADNESS Products in the online marketplace accounts are strikingly similar, or at the very least substantially similar to the MATCH MADNESS Copyrights, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights.

68.     As just one example, Defendants deceive unknowing consumers by using the MATCH MADNESS Copyrights without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:



*Counterfeit MATCH MADNESS Products sold on exemplary Defendant Online Store*

*compared to*



*Genuine MATCH MADNESS Products the subject of the federally registered MATCH*

*MADNESS Copyright Registrations*

69.     Defendants' exploitation of Plaintiff's copyrights for the MATCH MADNESS Products in the Defendant Internet Stores constitutes infringement of Plaintiff's MATCH MADNESS Copyrights.

17

70.    On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyright.

71.    Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit Products.

72.    Each Defendant either knew, or should have reasonably known, that Plaintiff's MATCH MADNESS Products were protected by copyright and their representations infringed on Plaintiff's copyrights. Each Defendant continues to infringe upon Plaintiff's rights in and to the various copyrighted works.

73.    As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

74.    In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

75.    In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

76.    Plaintiff is entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

77.    Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

78.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known MATCH MADNESS Copyrights.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES**
**(815 ILCS § 510/1, et seq.)**
**[Against Defendants Designated in Schedule A]**

79.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–78 of this Complaint.

80.     Plaintiff has not licensed or authorized Defendants to use the MATCH MADNESS Trademark or MATCH MADNESS Copyrights, and none of the Defendants are authorized retailers of genuine MATCH MADNESS Products.

81.     Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's MATCH MADNESS trademark and copyrights.

82.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit products by Plaintiff.

83.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit MATCH MADNESS products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

84.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiff's products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking MATCH MADNESS Products to Defendants' online marketplace accounts; (ii) using deceptive advertising practices within the text

19

and metadata of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

85.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

86.     The foregoing acts of Defendants constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

87.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.     using the MATCH MADNESS Trademark or MATCH MADNESS Copyrights or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine MATCH MADNESS Product or is not authorized by Plaintiff to be sold in connection with the MATCH MADNESS Trademark or MATCH MADNESS Copyrights;

    b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine MATCH MADNESS Product or any other product produced by

20

Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the MATCH MADNESS Trademark or MATCH MADNESS Copyrights;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the MATCH MADNESS Trademark or MATCH MADNESS Copyrights and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademark or copy any Plaintiff copyright, including the MATCH MADNESS Trademark or MATCH MADNESS Copyrights or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h. operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing either or both of the MATCH MADNESS Trademark or MATCH MADNESS Copyrights or any reproduction, counterfeit copy or colorable imitation thereof that is

21

not a genuine MATCH MADNESS Product or not authorized by Plaintiff to be sold in connection with the MATCH MADNESS Trademark or MATCH MADNESS Copyrights.

2.      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1 above;

3.      Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendant Internet Stores shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendant Internet Stores, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Internet Stores to a registrar of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Internet Stores to a registrar of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Internet Stores and make them inactive and untransferable;

4.      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as the Marketplace Platforms, social media platforms such as Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Internet Stores, and domain name registrars, shall:

a.      disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

b.      disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

c.      take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but

not limited to, removing links to the Defendant Internet Stores from any search index.

5. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MATCH MADNESS Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

6. In the alternative, that Plaintiff be awarded statutory damages of not less than $750 and not more than $30,000 for each and every infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

7. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8. Award any and all other relief that this Court deems just and proper.

Dated:     May 16, 2022                    Respectfully submitted,

                                          THOITS LAW

                                          By:___*/s/David E. Hutchinson*___
                                                David E. Hutchinson
                                                47 W Polk Street, Ste 100 #221
                                                Chicago, IL 60605
                                                (650) 327 4200
                                                dhutchinson@thoits.com

                                                Harry Moren
                                                Christopher Tom
                                                400 Main Street, Suite 250
                                                Los Altos, CA 94022
                                                (650) 327-4200
                                                hmoren@thoits.com
                                                ctom@thoits.com

                                                *Attorneys for Plaintiff*
                                                *FoxMind Canada Enterprises, Ltd.*