IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOXMIND CANADA ENTERPRISES, LTD.<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No. 22-cv-02552<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Gabriel A. Fuentes |

### THE UZZLE AND ALL STAR TOYZ'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION [ECF NO. 34]

The Uzzle (www.theuzzle.com) and All Star Toyz (www.allstartoyz.com) (collectively, the "Defendants") file this Response (the "Response") to Plaintiff's Motion for Entry of Preliminary Injunction [ECF No. 34] (the "Motion") respectfully requesting that the Court deny Plaintiff Foxmind Canada Enterprises, Ltd.'s (the "Plaintiff") request for injunctive relief against them in their entirety. In support of this Response, The Uzzle and All Star Toyz respectfully show the Court as follows:[1]

### I.    SUMMARY OF THE ARGUMENT

1.    Before considering Plaintiff's Motion, the Court should sever this case for misjoinder. Specifically, Plaintiff improperly names 109 defendants in this single case without showing that the nature of Plaintiff's claims with respect to the Defendants arise out of the same

---

[1] This Response is also supported by The Declaration of Zach Isaak., filed concurrently herewith.

1

transaction, occurrence, or series of transactions or occurrences as any of the other defendants. Nor has Plaintiff shown that Defendants share a question of fact that is common to all defendants in this case. Moreover, Plaintiff's Complaint [ECF No. 1], Motion for Temporary Restraining Order [ECF No. 8], and the Motion fail to plead any facts specific to either The Uzzle or All Star Toyz. Not only are Plaintiff's pleadings with respect to Defendants clearly deficient under Federal Rule of Civil Procedure 8's pleading standards—they fail to establish that Plaintiff is likely to prevail on the merits of its case with respect to these two businesses. Plaintiff's pleadings are entirely general and conclusory in nature. *See*, *e.g.*, ECF Nos. 1, 8, 34.

2. Critically, in stark contrast to the rest of the defendants in this case, Defendants are not counterfeiters and do not infringe on Plaintiff's trademark or copyrights—The Uzzle is an entirely different board game than Match Madness. Review of The Uzzle board game and game packaging shows that it **does not bear the Match Madness trademark in any respect** and, accordingly, does not infringe on Plaintiff's trademark. In addition, The Uzzle has its own copyright, which was issued on August 5, 2021 (U.S. Copyright Registration No. VAu001467935) for its unique 2-D board game design that is entirely separate and distinct from the Plaintiff's copyrights. Although Plaintiff may maintain that The Uzzle's board game concept is the same as Match Madness, the idea for and procedure or method of operation used in a game is not copyrightable under 17 U.S.C. § 102(b). There cannot be any infringement as it relates to Match Madness' game concept. Thus, Plaintiff has not and cannot show The Uzzle infringes on its trademark or copyrights in any way.

3. Importantly, the evidence also shows The Uzzle has generated and continues to generate significant sales revenue for Match Madness. And approximately twenty percent of

Defendants' sales of The Uzzle board game are to individuals living in New Zealand, Australia, and the United Kingdom. Plaintiff has not shown that it has registered copyrights relating to Match Madness outside of the United States, nor has it shown that it has incurred or will incur any damages as a result of actions taken by the Defendants. Further, because Plaintiff's alleged harm could be compensated monetarily, Plaintiff cannot show that it has no adequate remedy at law. Plaintiff fails to show that it is likely to succeed on the merits of its claims against the Defendants; its request for injunctive relief should be denied.

## II. BACKGROUND

4. Defendants are websites that sell a board game called "The Uzzle," which was created by a company called NewWave, LLC in or around June 2021. On July 6, 2021, NewWave, LLC registered "The Uzzle" trademark (U.S. Trademark Serial No. 90811947). In or around August 5, 2021, NewWave LLC was issued a copyright (U.S. Copyright Registration No. VAu001467935) for The Uzzle's unique 2-D designs. *See* **Ex. 1**, The Uzzle Trademark and Copyright. The Uzzle does not bear the name "Match Madness" or otherwise use Plaintiff's trademark in any manner. *See* **Ex. 2**, photographs of The Uzzle.

5. **The Uzzle does not compete with Match Madness**—it is a unique game with its own unique set of rules and features. Specifically, The Uzzle was sold exclusively through www.theuzzle.com, which is its own Shopify web store. In contrast, Match Madness is sold wholesale and wholesale to Amazon—completely separate channels from The Uzzle. Moreover, The Uzzle does not impact Match Madness sales because Match Madness is not sold in retail stores. Further, unlike Match Madness, The Uzzle was marketed heavily on Facebook. Such marketing has not been utilized by Plaintiff for Match Madness. Instead, an Instagram story ad

was recently launched to drive traffic to Match Madness' Instagram page, which provides a link to a wholesale partner, Barnes and Noble, once a user lands on the page. Accordingly, ad viewer is incentivized to follow Instagram for Match Madness.

6. Unlike Match Madness, the Uzzle does not sell its games on Amazon. At its peak, search volume for "The Uzzle" on Amazon shows "The Uzzle" was garnering 4,500 searches in one week (see **Figure A** below).[2] One of the top results for "The Uzzle" on Amazon is Match Madness. Match Madness was previously ranked higher until very recently when counterfeiters began improperly—without any knowledge or authorization from Defendants—using "The Uzzle" name in their listings (see **Figure B** below).

**FIGURE A**



---

[2] All data included in the foregoing analysis was calculated by Jungle Scout—a multimillion dollar software company used by Amazon sellers across the world to obtain extremely accurate search and revenue estimates.

**FIGURE B**



7. The Uzzle's peak advertising period was in November 2021 and slowly declined into December 2021. The Uzzle stopped running all ads on December 20, 2021. As a result, Match Madness sales dropped dramatically and continue to fall (see **Figure C** below).

5

**FIGURE C**



8. Google Search Engine Optimization traffic is being sent straight to Amazon when a user searches for "The Uzzle" because Amazon commands higher search rankings on Google due to their credibility and website traffic (see first search result in **Figure D** below). When searching through Google, the game linked in the Google search is unavailable so the customer is forced to search for "The Uzzle" on Amazon, which will then present them with "Match Madness" as a result, thereby generating more customer traffic and revenue for Match Madness.

**FIGURE D**



9. Amazon previously violated "The Uzzle" trademark and was running ads on the keyword for "The Uzzle". The owner of The Uzzle was able to successfully have Amazon take the ads down, but the removal took over a month. This amounted to an entire month of more free traffic leading directly to Plaintiff's Match Madness game.

10. $1.2 million was spent on The Uzzle advertisements for Facebook alone. This was traffic paid by The Uzzle that led to free revenue for FoxMind (see **Figure E** below).

**FIGURE E** - ADVERTISING SPENT FOR THE UZZLE



7

### III. ARGUMENT & AUTHORITIES

11. Defendants incorporate paragraphs 1-10 above by reference as if fully set forth herein.

**A. Defendants are improperly joined in this lawsuit.**

12. Before resolving Plaintiff's Motion, this Court should first address the issue of joinder. *See Art Ask Agency v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, No. 21-CV-06197, 2021 WL 5493226, at *1 (N.D. Ill. Nov. 23, 2021). Under Federal Rule of Civil Procedure 20(a)(2), Plaintiff must show that joinder is appropriate. *Id.* (citing *Illustrata Servicos Design, Ltda. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-05993, 2021 WL 5396690, at *1 (N.S. Ill. Nov. 18, 2021); *NFL Properties LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-05522, 2021 WL 4963600, at *1 (N.D. Ill. Oct. 26, 2021); *H-D U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-01041, 2021 WL 780486, at *1 (N.D. Ill. Mar. 1, 2021)). "In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in the plaintiff's complaint as true." *Art Ask Agency*, 2021 WL 5493226 at *1 (citing *Estée Lauder Cosmetics, Ltd. v. The Partnerships and Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 182, 185 (N.D. Ill. 2020)). "That said, courts need not accept conclusory or speculative statements that are not statements of fact." *Art Ask Agency*, 2021 WL 5493226 at *1 (citing *Illustrata*, 2021 WL 5396690 at *1; *NFL Properties*, 2021 WL 4963600, at *1; *H-D U.S.A.*, 2021 WL 780486, at *1; *Estée Lauder*, 334 F.R.D. at 185).

13. Federal Rule of Civil Procedure 20(a))(2) provides that defendants may only be

joined in the same action if: (1) the claims against them are asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." FED. R. CIV. P. 20(a)(2)(A)-(B). To decide "whether the rights asserted arise out of the same transaction or occurrence, courts should 'consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds.'" *Art Ask Agency*, 2021 WL 5493226 at *2 (quoting *Estée Lauder*, 334 F.R.D. at 185); *see also Ross ex. Rel. Ross v. Bd. Of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007). "Courts typically find that claims against different defendants arise out of the same transaction or occurrence when there is 'a logical relationship between the separate causes of action.'" *Art Ask Agency*, 2021 WL 5493226 at *2 (quoting *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012); *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994); *Estée Lauder*, 334 F.R.D. at 185). "Claims have a logical relationship when there is a 'substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant.'" *Art Ask Agency*, 2021 WL 5493226 at *2 (quoting *Estée Lauder*, 334 F.R.D. at 185).

14. Whenever a court finds that joinder is not consistent with the Federal Rules of Civil Procedure, it may sever parties on its own or direct the plaintiff to remedy the issue. *Art Ask Agency*, 2021 WL 5493226 at *2 (citing *Illustrata*, 2021 WL 5396690 at *2; *NFL Properties*, 2021 WL 4963600, at *2; *Estée Lauder*, 334 F.R.D. at 186). Courts in the Northern District of Illinois have held that plaintiffs cannot satisfy Rule 20's requirements by merely alleging that multiple defendants have infringed the same copyright, patent, or trademark. *See, e.g.*, *Estée Lauder*, 334 F.R.D. at 187; *Slep-Tone Ent. Corp. v. Roberto*, No. 12-cv-5750, 2013 WL 5748896, at *2–3 (N.D. Ill. Oct. 22, 2013); *ThermaPure, Inc. v. Temp-Air, Inc.*, No. 10-cv-4724, 2010 WL 5419090, at *4

(N.D. Ill. Dec. 22, 2010); *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, No. 10 C 1101, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010); *SB Designs v. Reebok Int'l, Ltd.*, 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004). This is the case because one defendant's alleged infringement does not necessarily arise "out of the same transaction, occurrence, or series of transactions of occurrences" as another defendant's unrelated infringement. *See* FED. R. CIV. P. 20(a)(2)(A). Where defendants are not affiliated with one another, there is no evidentiary overlap in proving that both defendants are liable for the alleged infringement. *Art Ask Agency*, 2021 WL 5493226 at *2 (citing *Ilustrata*, 2021 WL 5396690, at *2; *NFL Properties*, 2021 WL 4963600, at *2; *H-D U.S.A.*, 2021 WL 780486, at *2; *Estée Lauder*, 334 F.R.D. at 187). From a defendant's perspective, one defendant's defenses do not depend on that of an unrelated codefendant. *Art Ask Agency*, 2021 WL 5493226 at *2 (citing *Ilustrata*, 2021 WL 5396690, at *2; *NFL Properties*, 2021 WL 4963600, at *2; *H-D U.S.A.*, 2021 WL 780486, at *2; *Estée Lauder*, 334 F.R.D. at 187).

15. Plaintiff's allegations are insufficient to show that joining all 109 defendants in this single lawsuit is proper. "[S]imilarities between websites does not suggest a logical relationship between every [d]efendant." *Art Ask Agency*, 2021 WL 5493226 at *2 (citing *Ilustrata*, 2021 WL 5396690, at *2); *see also Bose Corp. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19 C 7467, 2019 WL 6210939, at *2 (N.D. Ill. Nov. 21, 2019). Nor are Defendants or their alleged infringement "interrelated" simply because Defendants sell similar products. *Art Ask Agency*, 2021 WL 5493226 at *2 (citing *Ilustrata*, 2021 WL 5396690, at *2; *H-D U.S.A.*, 2021 WL 780486, at *3; *Bose*, 2019 WL 6210939, at *2; *Rudd v. Lux Prods. Corp.*, No. 09-cv-6957, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011) ("Simply alleging that Defendants manufacture or sell similar products does not support joinder under Rule 20.").

16. The conclusory statements set forth in Plaintiff's Complaint, Motion for Temporary Restraining Order, and the Motion do not support joinder. *See* ECF Nos. 1, 8, 34; *Art Ask Agency*, 2021 WL 5493226 at *2 (citing *Ilustrata*, 2021 WL 5396690, at *2; *NFL Properties*, 2021 WL 4963600, at *2; *H-D U.S.A.*, 2021 WL 780486, at *2–3; *see also Bose*, 2019 WL 6210939, at *2) (finding that similar "notable common features" allegation did not support joinder). Nor should the Court conclude that joinder of all 109 defendants would promote judicial economy. To the contrary, joinder in this case may yield significant financial benefits to Plaintiff at the judiciary's expense. *Art Ask Agency*, 2021 WL 5493226 at *3. As discussed more fully in *H-D U.S.A.*, cases naming many unrelated defendants burden the courts. *See H-D U.S.A.*, 2021 WL 780486, at *3 (citing *Estée Lauder*, 334 F.R.D. at 189–90 and *Purzel Video GMBH v. Does 1-91*, Case No. 4:12-cv-02292, 2013 WL 4775919, at *2 (E.D. Mo. Sept. 6, 2013)). And by bringing a single action against 109 defendants rather than filing as many as 109 separate suits, Plaintiff is saving approximately $44,000 in filing fees. *See* Northern District of Illinois Fee Schedule ("Civil Filing Fee $ 402.00"); *Art Ask Agency*, 2021 WL 5493226 at *3 (citing *Patent Holder Identified in Exhibit 1 v. Does 1-254*, No. 21 C 514, 2021 WL 410661, at *3 (N.D. Ill. Feb. 6, 2021) ("[B]y suing 254 defendants in a single suit rather than 254 separate ones, the plaintiff will save, in one fell swoop, over $100,000 in filing fees.")).

17. As explained above, unlike the other defendants in this case, Defendants are not counterfeiters. Plaintiff's claims relating to The Uzzle do not arise out of the same transactions, occurrences, or series of transactions or occurrences as those involving the other defendants. The Uzzle is not similar to the products made or sold by the other defendants—it does not bear the Match Madness trademark and its unique designs are copyrighted. The other defendants do not

11

sell their products on www.theuzzle.com or www.allstartoyz.com. And to the extent the other defendants are using "The Uzzle" name to market their products, such actions are being done without Defendants' knowledge or consent—they are counterfeiting The Uzzle and infringing on its copyright and trademark. *See*, *e.g.*, **Figure B**. Accordingly, the Defendants are misjoined in this case.

### B. Plaintiff's request for preliminary injunction should be denied because it fails to show it is likely to succeed on the merits of its claims against Defendants.

18. To obtain a preliminary injunction Plaintiff must demonstrate (1) some likelihood that it will prevail, (2) absence of an adequate remedy at law, and (3) that it will suffer irreparable harm absent injunctive relief. *Ty, Inc. v. Le Clair*, 103 F.Supp.2d 1047, 1048 (N.D. Ill. 2000). Should those requirements be satisfied, then the Court must weigh the portended irreparable harm to the Plaintiff against the potential injury to the defendant and must consider the effect of the injunction upon non-parties. *Id*. "A determination whether to issue a preliminary injunction is, by its very nature, an exercise in weighing competing equities and interests." *Id*. (quoting *Publications International, Ltd. v. Meredith Corp.,* 88 F.3d 473, 478 (7th Cir. 1996)). Copying of a work can be shown by proof of access and substantial similarity. *Le Clair*, 103 F.Supp.2d at 1049. Copying is not enough. *Id*. The test of substantial similarity is copying *and* improper appropriation. *Id*. The Copyright Act "assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Id*. (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 349–350, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).

### 1. Plaintiff cannot show Defendants are violating their trademark.

19. The Uzzle has its own trademark. *See* **Ex. 1**. Mere inspection of The Uzzle board

game and contents shows that it in no way bears or utilizes the Match Madness trademark. *See* **Ex. 2**. Accordingly, Plaintiff cannot prevail on the merits of its trademark infringement claim against Defendants.

### 2. The Uzzle is not substantially similar Match Madness—its designs are unique and distinguishable enough to secure its own copyright.

20. The Uzzle's unique 2-D designs, which are protected by their own copyright, are distinguishable from those of Match Madness. *See* **Ex. 1**. Specifically, The Uzzle's blocks have entirely different shapes, numbers and colors than Match Madness' blocks, and are larger. *See* **Ex. 2**. The Uzzle cards are also larger, have different designs, numbers, and colors. *Id*. The Uzzle box is bears no resemblance to the Match Madness box, nor does it in any way create any sense of confusion in a consumers mind as to whether The Uzzle is affiliated with Plaintiff, Plaintiff's copyrights, or Match Madness. *Id*. And The Uzzle comes with more accessories and playing options than Match Madness, including a gel gun toy, extra block pieces to expand the number of players, and an entirely different set of rules to transform the board game into a drinking game. *Id*. Moreover, a large part of The Uzzle's sales are to customers outside of the United States. Plaintiff has not shown that it possesses copyrights for Match Madness outside of the United States. Aside from conclusory, unsubstantiated allegations, Plaintiff fails to plead any facts specific to the Defendants, much less facts showing the Defendants are utilizing or otherwise infringing upon its copyrights or that The Uzzle is substantially similar to Match Madness. Bare, conclusory allegations are insufficient to establish Plaintiff's claims against Defendants or to show that they are likely to prevail on the merits of such claims.

21. Nor has Plaintiff shown Defendants have improperly appropriated Match Madness. As discussed in section II above, The Uzzle is not in competition with Match Madness

13

at all—it is housed on entirely separate shopping platforms and its marketing actually generates customers and sales revenue for Match Madness. *See* Figures A-E. Puzzle board games have been long with us—the idea and concept is not unique and Match Madness was certainly not the first one created. For example, world renowned toymaker Mattel has a block puzzle board game called "Blokus" and MindWare creates a block puzzle board game called "Quirkle," whose block design shapes bear a substantial resemblance to the Match Madness blocks.

### 3. The evidence shows Plaintiff has not been harmed—it has only gained customers and sales revenue as a result of Defendants' actions.

22. Plaintiff has not and cannot show that it has suffered any injury as a result of Defendants' actions. In fact, the opposite is true—not only does the evidence show that The Uzzle does not compete with Match Madness, The Uzzle has been and continues to generate customers and sales revenue for Match Madness through its existence and advertising. *See* Figures A-E above. In fact, the evidence shows that as soon as The Uzzle stopped advertising in December 2021, Plaintiff's sales of Match Madness immediately decreased. *Id*. In this case, granting a preliminary injunction with respect to Defendants will negatively impact Plaintiff's sales of Match Madness, thereby harming Plaintiff. Moreover, to the extent Plaintiff can prove that it has been harmed by Defendants (it cannot), such harm can be addressed through monetary compensation. In other words, Plaintiff cannot show there is an absence of adequate remedy at law with respect to Defendants' purported actions. Accordingly, Plaintiff has not and cannot satisfy the elements necessary to obtain a preliminary injunction against Defendants. Its application for preliminary injunction should therefore be denied.

## PRAYER

Based on the foregoing, Defendants The Uzzle and All Star Toyz respectfully request

that this Court deny Plaintiff's Motion for Entry of Preliminary Injunction with respect to them, and for all other and further relief—at law or in equity—to which they may be justly entitled.

Respectfully submitted.

AKERMAN LLP

/s/     *Rola Daaboul*
Rola Daaboul
500 West 5th Street
Suite 1210
Austin, TX 78701
T: (737) 999-7108
F: (512) 623-6701
rola.daaboul@akerman.com
Julia R. Lissner
71 South Wacker Drie
47th Floor
Chicago, IL 60606
T: (312) 634-5711
F: (312) 424-1905
julia.lissner@akerman.com

***Counsel for Defendants***
***The Uzzle and All Star Toyz***

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOXMIND CANADA ENTERPRISES, LTD.<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No. 22-cv-02552<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Gabriel A. Fuentes |

## DECLARATION OF ZACHARY ISAAK

I, **Zach Isaak**, declare and state as follows:

1. My name is ZACHARY ISAAK. I am over 18 years of age, of sound mind, and capable of making this declaration.

2. I have personal knowledge of the facts stated in The Uzzle and All Star Toyz's Response to Plaintiff's Motion for Entry of Preliminary Injunction and the documents attached thereto, they are based upon my involvement as an employee of NewWave, LLC, and they are true and correct.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed in   Contra Costa   County, State of California, on the 13th day of June, 2022.

_____
**ZACHARY ISAAK**

63964089;1